NATIONAL RAILROAD PASSENGER CORPORATION t/a and/or known as Amtrak, Petitioner,

v.

Mather FOWLER, a minor, by his parent and natural guardian, Tynia M. Fowler and Tynia M. Fowler, in her own right, Respondents.

Mather Fowler, a minor, by his parent and natural guardian, Tynia M. Fowler and Tynia M. Fowler, in her own right,

v.

Concern–Professional Services for Children, Youth and Families; Borough of Parkesburg and National Railroad Passenger Corporation t/a and/or known as Amtrak.

Appeal of: National Railroad Passenger Corporation ('Amtrak').

Mather Fowler, a minor by his parent and natural guardian, Tynia M. Fowler, and Tynia M. Fowler, in her own right,

v.

Concern–Professional Services for Children, Youth and Families; Borough of Parkesburg; and National Railroad Passenger Corporation t/a and a/k/a Amtrak.

Appeal of: Concern–Professional Services for Children, Youth and Families.

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2001.

Decided Nov. 21, 2001.

Diane J. Ruccia, Newark, NJ, for petitioner/appellant.

Joseph C. Murray, Philadelphia, for respondents/appellees.

John F. Ledwith, Philadelphia, for appellee, Concern-Professional Services for Children, Youth and Families.

Before PELLEGRINI, J., FRIEDMAN, J., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

Before this Court are three consolidated appeals from discovery orders of the Court of Common Pleas of Chester County (trial court) involving the confidentiality of documents created by employees of Concern–Professional Services for Children, Youth and Families (Concern) and documents of the Delaware County Juvenile Court. The first appeal is by Concern from an order of the trial court denying its motion for a protective order. The second appeal is by National Railroad Passenger Corporation, a/k/a Amtrak (Amtrak), from two orders of the trial court denying its motion to subpoena records from the Delaware County Juvenile Court and denying its application to the trial court to include a certification allowing it to appeal from an interlocutory order.

These appeals arise from an incident on June 16, 1997, involving Mather Fowler (Mather). On that date, Concern, a residence for troubled youth that had custody of 14–year old Mather, took Mather to the Borough of Parkesburg to perform community service work. Mather was ordered to clean up the Parkesburg Bridge which was severely deteriorated and had holes in the surface with high voltage electric power er lines running underneath. While performing the assigned activity, Mather fell through a hole in the bridge, made contact with a live power line, and was electrocuted. He allegedly suffered severe burns over his body, some of which necessitated amputating parts of his right foot.

## I.

As a result of this accident, Mather's mother (Fowler) filed a complaint in the trial court against Concern on her son's behalf seeking damages for his injuries, claiming that Concern's negligence in allowing Mather to work on the bridge and failing to properly supervise his activities caused her son's injuries.[1] During discovery, Fowler served interrogatories and a request for production of documents on Concern, and when no answers to these discovery requests were received, Fowler filed a motion to compel answers. Concern filed responses to Fowler's discovery requests, along with objections, raising, *inter alia,* that the documents did not need to be produced or investigated because the documents were protected by the attorney-client privilege or the work-product privilege or both. The trial court, through the Honorable James P. MacElree, II, denied Fowler's motion as moot because Concern had filed the requested responses. Because Concern refused to provide all of the documents requested, Fowler then filed a motion to strike discovery responses and to compel more particular answers. Concern filed a timely response with objections, and on October 4, 1999, the trial court issued an order finding that Concern had waived its right to file a motion for a protective order because it did not timely file its request to the original production

1. In paragraph 24 of her complaint, Fowler alleged:

As a result of the aforesaid accident, Minor Plaintiff, Mather Fowler, sustained serious and painful injuries, including but not limited to, 11,500 volt electrical shock, full thickness burn to right foot, electrical burns to right arm and right side of body, 3.5% burn of total body surface, fourth degree burn with significant electrical injury to the right great toe and foot, osteomyelitis of exposed proximal phalanx requiring debridement of electrical injury right toes with amputation of proximal phalanx and distal portion of the first metatarsal (right great toe) and skin graft, complication of amputation of right great toe and permanent scarring, as well as a severe shock to his nerves and nervous system and was otherwise bruised, lamed and disordered, some or all of which are permanent in nature.

request and directing Concern to provide full disclosure within 20 days. Concern did not file an appeal from this order.

Despite the trial court's order overruling its objections, Concern provided supplemental responses that again raised the attorney-client privilege and work-product privilege to the requested information and redacted portions of the documents it produced.[2] Fowler then filed a motion for sanctions against Concern for violating the trial court's October 4, 1999, order. On February 4, 2000, Concern filed an answer to Fowler's motion, along with a motion for a protective order, "to prevent the disclosure of privileged and/or protected information and/or documentation as already provided and as indicated in Defendant Concern's Response to Plaintiff's Interrogatories and Request for Production of Documents Directed to Defendant Concern." By order dated May 16, 2000, the trial court, this time through Judge Cody, denied Concern's motion for a protective order.[3]

Concern then filed a motion for reconsideration which Judge Cody granted, and oral argument was ordered to produce the documents at issue to the trial court for an *in camera* review. After arguments and review of the documents, by order dated July 13, 2000, Judge Cody denied the motion for protective order and ordered Concern to provide complete and full disclosure of the documents without redactions to Fowler. Concern filed another motion for reconsideration arguing that the trial court erred in denying its motion for protective order because the redacted portions of the documents contained information protected by the attorney-client privilege, the work product doctrine and/or Pa. R.C.P. Nos. 4003.1, 4003.3 or 4011. Again, the trial court, through Judge Cody, disagreed, finding the documents were not privileged because the three Concern employees whom authored the documents were not clients of Concern's attorney. This appeal by Concern followed.

## II.

The second appeal involves Amtrak whom Fowler also named as a defendant in her complaint as the alleged owner of the bridge. On November 11, 1999, during pre-trial discovery, Amtrak served notices of intent to serve subpoenas to the Custodian of Records of Delaware County Juvenile Court (Juvenile Court). Amtrak argued that it was entitled to the records because it needed to obtain relevant information regarding Mather's background, as well as his mental, emotional and psychological state prior to and after the accident, to determine whether all injuries alleged were related to the accident. It also argued that the records were relevant to Fowler's claims for diminished future

---

**2.** Specifically, the documents with redacted portions are 1) the Bonnie Jones' Memorandum to Concern's attorney Larry Shtasel (Shtasel) dated June 17, 1997, detailing her conversations with the Borough's foreman and street committee chairman after the incident; 2) excerpts from Mark Schettler's chronological case record of Mather dated June 16 and 17, 2001, which were sent to Shtasel detailing conversations he had with various hospital personnel and Mather following the incident; and 3) Greg Girolamo's file notes on Mather dated June 16, 2000 through July 1, 1997, that were sent to Shtasel. Bonnie

Jones is a teacher's aide for Concern; Mark Schettler is a case manager at Concern; and Greg Girolamo is the Director of Concern.

**3.** Judge Cody stated in a footnote:

As we have stated in our companion Order granting Plaintiff's Motion to Compel Discovery, we decline to revisit Judge MacElree's Order of October 4, 1999. Moreover, Defendant Concern has failed to identify in its motion what privilege prohibits production of the materials requested.

earning capacity and loss of enjoyment of Mather's usual duties, life's pleasures and activities.

Fowler filed objections alleging that the documents requested were privileged under the Juvenile Act and 42 Pa.C.S. §§ 6307 and 6354. Amtrak filed a motion to quash Fowler's objections which the trial court denied by order dated August 2, 2000, because the production of the records at issue were unrelated to the burn injury in question.[4] The trial court also found that Amtrak did not have a direct involvement with the Juvenile Court proceedings and did not have a legitimate interest in the criminal proceedings. Amtrak filed an application with the trial court asking it to amend its order to include language allowing for an interlocutory appeal by permission, but the trial court denied that application by order dated October 11, 2000. Amtrak then filed a petition for review with this Court from the trial court's order refusing to amend its order. Amtrak also filed a notice of appeal with the Superior Court appealing paragraph 2, footnote 1 of the trial court's August 2, 2000 order denying its motion to quash Fowler's objections to the Juvenile Court subpoena which transferred the matter to this Court. By order dated December 7, 2000, we consolidated the two cases and required the parties to brief the issue of whether the August 2, 2000 order pertaining to Amtrak was a collateral or-

---

4. In paragraph 2 of its August 2, 2000 order, the trial court denied Amtrak's motion to quash Fowler's objection to subpoena the Custodian of Records at Delaware County Juvenile Court, explaining its reasoning as follows in footnote 1:

   Plaintiffs contend that these subpoenas seek information which is privileged under 42 Pa.C.S.A. § 6307. *See also V.B.T. v. Family Services of Western Pennsylvania*, 705 A.2d 1325 (Pa.Super.1998), *aff'd*, 556 Pa. 430, 728 A.2d 953 (1999).

   In *V.B.T.*, parents of a minor child brought suit against a foster family (the Pedatellos) and Family Services for abuse suffered by their child at the hands of a foster child in the Pedatellos' care. The Pedatellos did not file an answer to the complaint. Instead, they filed a motion for a protective order relieving them of the obligation to file an answer and respond to interrogatories regarding parenting of the foster child. They argued that responding to these claims would require divulging privileged information about the child. Family Services also sought a protective order stating that information about the child's personal and family history is privileged. The trial court denied both motions.

   The Superior Court found that the records of the proceedings under the Juvenile Act, 42 Pa.C.S.A. § 6307 and the Child Protective Services Law, 23 Pa.C.S. A. §§ 6301 to 6385[sic] are privileged and confidential and not subject to discovery. With regard to both these Acts, the Superior Court stated that the competing interests of both parties must be weighed to determine if the interest of the party pursuing the tort litigation outweighs the purpose of the statute in protecting privileged information.

   Here, Defendant Amtrak seeks information from the Delaware County Juvenile Court regarding minor Plaintiff's juvenile record. Like *V.B.T.*, this is a civil matter wherein a civil defendant seeks information and documentation from the Delaware County Juvenile Court about possible behavioral problems, criminal record(s) and psychological background, which are allegedly relevant to minor Plaintiff's future earning potential and ability to enjoy life; however, the juvenile court records sought herein are unrelated to the burn injury in question. Because Amtrak did not have a direct involvement with the juvenile court proceedings in question, and therefore did not have a "legitimate interest" in the criminal proceedings involving minor Plaintiff, Amtrak does not fall under an exception to the Juvenile Act. 42 Pa.C.S.A. § 6307. *See also V.B.T v. Family Services of Western Pennsylvania*, 705 A.2d 1325, 1331 (Pa.Super.1998). The limited value of predicting the life expectancy and lifelong earning capacity of this minor child through his juvenile court records is insufficient to overcome the privilege applicable to these records.

der before determining whether to address the merits of the appeal.[5]

### III.

Initially, Fowler contends that Concern's appeal from the orders dated May 16, 2000 and July 13, 2000, that Judge Cody issued should be dismissed because it did not appeal from the October 4, 1999 order issued by Judge MacElree.[6] Fowler contends that because Concern did not file an appeal from Judge MacElree's order, Judge Cody, a judge of equal jurisdiction, was without power to sustain the same objections or to grant a motion for reconsideration on the same issues that were presented before Judge MacElree. Concern, however, argues that Judge MacElree never found that it could not file a motion for a protective order, and the "law of the case" doctrine does not apply because the same issues were not presented before both judges. It argues that the issue before Judge MacElree dealt with Fowler's compelling of sufficient discovery responses, not with the examination of redacted information on documents claimed to be privileged and/or protected which fall outside the scope of discovery.

Contrary to Concern's argument, our review of Judge MacElree's order indicates that he did, indeed, determine that Concern had waived its right to file a motion for a protective order. In footnote 1 of his order, Judge MacElree explained:

With regard to the Request for Production of Documents, the request was served March 1, 1999. Concern did not provide answers and objections to the request for production until June 22, 1999 after the first motion to compel was filed on June 1, 1999. An objection to interrogatories or other discovery under Pa. R.C.P. 4006(a)(2) or an application for protective order under Pa. R.C.P. 4012 must be filed before the party seeking discovery has filed a motion for sanctions or other motion seeking to enforce compliance with the discovery request or else the objection or the grounds upon which the protective order is sought will be waived. *Mountain View Condominium Owners' Association v. Mountain View Associates,* 9 D. & C. 4th 81 (1991). Here, plaintiff seeks to strike Concern's objections and answers to requests 1, 2, 11, 14, 17 and 22. Based on *Mountain View,* plaintiff's request is granted as Concern failed to lodge its objections in a timely manner, i.e., before the first motion to compel was filed.

Because Judge MacElree found that Concern had not timely filed its objections

---

**5.** Our December 7, 2000 order specified in relevant part:

(2) The motion to quash the appeal docketed at 2627 C.D.2000 shall be listed for disposition at the same time as the merits of the appeal. In their principle briefs on the merits, the parties shall address whether the order appealed is a collateral order; (3) If this Court concludes that the order appealed is a collateral order giving rise to an appeal as of right, the petition for review at 2505 C.D.2000 shall be dismissed, and the court will proceed to address the merits of the appeal. If the Court concludes that the order appealed is not a collateral order and is not otherwise appealable as of right,

the Court shall consider whether to grant the petition for review. If the petition is granted, the Court shall proceed to address the merits of the appeal.

**6.** We note that in *In re Estate of Petro,* 694 A.2d 627 (Pa.Super.), *petition for allowance of appeal denied,* 550 Pa. 719, 706 A.2d 1213 (1997), the Superior Court determined there was no statutory or common law requirement that a collateral order be appealed within 30 days of its entrance or forever be precluded. However, there was a strong dissent from Judge Ford Elliot that reasoned a collateral order is the same as a final order for purposes of appeal and must be filed within 30 days or waived.

based on privilege, that was the same as finding that Concern could not file a motion for a protective order based on privilege.

■ As to whether Judge Cody, a judge in a coordinate jurisdiction, abused her discretion under the "law of the case" doctrine when she heard Concern's motion for a protective order, the "coordinate jurisdiction rule" recognizes that judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995). This rule is premised on the policy of fostering finality in pre-trial proceedings to promote judicial economy and efficiency. *Id.* In *Riccio v. American Republic Insurance Co.*, 550 Pa. 254, 705 A.2d 422 (1997), our Supreme Court held that whether the coordinate jurisdiction rule applied was not determined by whether an opinion was issued in support of the initial ruling, but where the rulings occurred in the context of the procedural posture of the case, stating:

> Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

*Id.* at 261, 705 A.2d at 425.

■ The coordinate jurisdiction rule falls within the "law of the case" doctrine which embodies the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court in the earlier phases of the matter. *Starr.*

"Among the related but distinct rules which make up the law of the case doctrine are that: ... upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor court." *Id.* at 574, 664 A.2d at 1331. Our Supreme Court in *Starr* explained that the rules that made up the "law of the case" doctrine served to promote judicial economy, protect the settled expectations of the parties, insure uniformity of decisions, maintain consistency during the course of a single case, effectuate the proper and streamlined administration of justice and bring litigation to an end. The departure from either the "coordinate jurisdiction rule" or the "law of the case" rule was allowed only in exceptional circumstances where:

> there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Compare Musumeci v. Penn's Landing Corporation*, 433 Pa.Super. 146, 151–152, 640 A.2d 416, 419 (1994), *appeal denied*, 539 Pa. 653, 651 A.2d 540 (1994) (the coordinate jurisdiction rule applies in all cases except where newly-discovered evidence or newly-developed legal authority compel a result different than that reached by the first judge) and *Commonwealth v. Brown*, 485 Pa. 368, 371, 402 A.2d 1007, 1008 (1979) (where the evidence is substantially the same as that originally ruled upon by the first judge, a second judge commits a *per se* abuse of discretion in overruling or vacating the prior order) (citations omitted) *with* 21 C.J.S. Courts § 149b (same).

*Id.* at 576, 664 A.2d at 1332.

While Judge Cody noted in her decision that she was not going to revisit his Octo-

ber 4, 1999 order, she went on to address the underlying merits of Concern's protective order and review that which seems to have been precluded when the merits of the objections raised by Concern Judge MacElree had been found to have been waived. Because the net effect of addressing the merits of the protective order was to revisit an issue already determined to have been waived, Judge Cody's order would normally be ineffective under the doctrine of "law of the case." Having said that, though, the "law of the case" issue can be revisited if a manifest injustice would occur if we did not revisit the issue.

■ In this case, although the failure of counsel to timely file objections was held to waive privilege, it would result in an injustice because it would adversely impact on counsel's client who actually holds the privilege. Not only is "the existence of a statutory privilege . . . an indication that the legislature acknowledges the significance of a particular interest and has chosen to protect that interest," *Commonwealth v. Chmiel*, 558 Pa. 478, 510, 738 A.2d 406, 423 (1999), but "the status or relationship, deeply imbedded in our legal culture, is of sufficient importance that the danger of denying justice by delay in appellate adjudication (which would result in irremediable disclosure of privileged material) outweighs the inefficiencies introduced by immediate appeal." *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1213, n. 3 (1999). Consequently, the defense of privilege is not waived by the untimely filing of an objection to a discovery request when counsel fails to timely raise that issue. In such an instance, it is counsel who should be penalized, not the client who holds the privilege. *See also McGovern v. Hospital Service Association of Northeastern Pennsylvania*, 785 A.2d 1012 (Pa.Super.2001). For these reasons, we find the "law of the case" doctrine does not apply and Judge Cody could address whether the documents were protected by the attorney-client privilege and will not dismiss Concern's appeal on that basis.[7]

## IV.

■ Even if Judge Cody's order does not violate law of the case, Fowler contends that Concern's appeal and Amtrak's appeal from the trial court's August 2, 2000 order denying its motion to quash Fowler's objections to the Juvenile Court subpoena preventing Amtrak from reviewing Mather's juvenile records are not collateral orders which this Court may review before a final order has been entered. Initially, we note that an appeal may only be

---

7. The dissent disagrees that the attorney-client privilege is not waived when an attorney dilatorily fails to answer a request for production of documents but raises the issue when a motion to compel is filed. However, the majority is not saying if information is provided to a party or no objection is made at trial that the attorney-client privilege is not waived. The majority opinion only holds that in such circumstances, where an attorney is dilatory in filing an objection, the attorney-client privilege should not be considered waived. Instead, punishment should be directed against the attorney for his dilatory conduct.

Additionally, both cases the dissent cites in opposition are inapposite. In *Birth Center v.* *St. Paul Companies, Inc.*, 727 A.2d 1144 (Pa.Super.1999), discovery requests had been made and an answer timely filed with documents produced and admitted into evidence. Obviously, once the documents were produced, the privilege was waived. In *Nissley v. Pennsylvania Railroad Co.*, 435 Pa. 503, 259 A.2d 451 (1969), a case involving medical experts, the doctor-patient privilege was not involved. An objection was made at trial to testimony of the doctor, but only because his identity had not been disclosed in an answer to an interrogatory requesting the name of each physician whom had consulted on the case.

taken from a final order unless otherwise permitted by statute or rule. *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999). A final order is one that ordinarily ends the litigation or disposes of the entire case. *Id.* However, Pa. R.A.P. 313 provides that an appeal may be taken as of right from a collateral order of a lower court and defines a collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."

Whether the granting of access to privileged information is appealable as a collateral order was decided in *In re: Ford Motor Company*, 110 F.3d 954 (3rd Cir. 1997). In that case, the administratrix of her husband's estate brought suit against the Ford Motor Company alleging that Ford defectively designed the Bronco II in which her husband was driving and was killed. She sought various documents relating to the development, marketing and safety of the Bronco. Ford refused to provide those documents raising the attorney-client privilege and work-product doctrine. The District Court found that some of the documents were discoverable and Ford filed an appeal.

The Court of Appeals first considered whether the order was appealable under the collateral order doctrine as set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Cohen* held that an appeal of a non-final order was appealable as a collateral order if 1) the order from which the appellant appealed conclusively determined the disputed question; 2) the order resolved an important issue that was completely separate from the merits of the dispute; and 3) the order was effectively unreviewable on appeal from a final judg-

ment. As to the first element, the Court of Appeals in *Ford* determined that it had been satisfied because the District Court's order requiring the production of the disputed documents left no room for further consideration by the District Court of the claim that the documents were protected.

Regarding the issue of separability, the Court of Appeals held that the issue of whether the vehicle was defectively designed was separate from the issue of attorney-client privilege as the issue of privilege could be addressed without analysis of the alleged negligence. Further, an issue was important if the interests that would potentially go unprotected without immediate appellate review of that issue were significant relative to the efficiency interests sought to be advanced by adherence to the final judgment. The Court of Appeals found that the interests protected by the attorney-client privilege were sufficiently significant relative to the interests protected by the final judgment rule. Finally, as to whether the order was effectively unreviewable on appeal, the Court of Appeals held that it was because, once the privileged information was disclosed, the right sought to be protected would be destroyed. Because all three prongs of the test were met, the Court determined that the appeal from the District Court's order that some of the documents were discoverable was a collateral order and reviewable.

Recently, this Court in *Joe v. Prison Health Services, Inc.*, 782 A.2d 24 (Pa. Cmwlth.2001), also addressed the issue of whether an order granting the production of documents despite arguments that they were protected under the attorney-client privilege was a collateral order. Utilizing the same standard as in *Ford*, we held that the trial court's order granting a motion to compel a request for production of documents, despite the allegation that the documents were protected by the attorney-

client privilege, was an appealable collateral order because the "privilege issues can be addressed without reference to the merits of the underlying action; the privileges asserted are sufficiently important for review; and, if the documents were disclosed, subsequent appellate review would be moot." *Id.* at 30.

▮ Regarding the documents sought by Amtrak under the Juvenile Act, while the privilege issue can be separated from the merits of the matter and it is sufficiently important for review, *Joe*, the trial court did not order that the documents be disclosed. Therefore, there is no harm because the right sought to be protected has not been destroyed. Consequently, the order of the trial court refusing Amtrak's request for production is not a collateral order which this Court may review and its appeal is dismissed.[8]

▮ As to Concern's appeal, all three prongs of the test are met. The privilege

issue can be separated from the merits, it is sufficiently important for review, and the trial court ordered that the documents be disclosed, thereby destroying the right sought to be protected. Because appellate review would be moot, Judge Cody's orders are collateral orders which this Court may review.

## V.

Turning then to the merits of Concern's appeal, it argues that the trial court erred in denying its motion for a protective order because the redacted portions of the documents requested by Fowler contained information protected by the attorney-client privilege, the work-product doctrine and/or Pa. R.C.P. Nos. 4003.1,[9] 4003.3 [10] and/or 4011 [11] in that they are comprised of mental impressions, conclusions and/or opinions relating to the value, merit, strategy and/or defense of Fowler's claim. It further argues that the trial court erred in determining that the documents were

---

**8.** As to Amtrak's petition for review from the trial court's order refusing to amend its October 11, 2000 order to include language allowing for an interlocutory appeal by permission, that issue was not briefed and the petition is dismissed.

**9.** Pa. R.C.P. No. 4003.1(a) provides in relevant part:

Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. (Emphasis added.)

**10.** Pa. R.C.P. No. 4003.3 provides:

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1

even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

**11.** Pa. R.C.P. No. 4011 provides in relevant part:

No discovery or deposition shall be permitted which ...

* * *

(c) is beyond the scope of discovery as set forth in Rules 4003.1 through 4003.6.

not privileged on the basis that Jones, Schettler and Girolamo were not clients of Shtasel, Concern's attorney, and were not authorized to act on Concern's behalf because those employees were protected by the attorney-client privilege to communications by corporate employees to corporate counsel.

### A. Attorney–Client Privilege

■ The attorney-client privilege is codified at 42 Pa.C.S. § 5928 and provides the following:

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial of the client.

This privilege is intended to foster candid communications between legal counsel and the client so that counsel can provide legal advice based upon the most complete information possible from the client. *Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406 (1999). The attorney-client privilege protects those disclosures that are necessary to obtain informed legal advice that might not be made absent the privilege, and the privilege only applies where the client's ultimate goal is legal advice. *Joe v. Prison Health Services, Inc.*, 782 A.2d 24 (Pa.Cmwlth.2001).

As to whether corporate employees are protected when providing information to the corporation's counsel, in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the United States Supreme Court held that the information provided by corporate employees of Upjohn in questionnaires sent to them by the corporation's attorney for the purpose of obtaining information regarding questionable payments to foreign government officials to secure government business were protected under the attorney-client privilege. The Court explained:

Middle-level—and indeed lower-level—employees can by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

*Id.* at 391, 101 S.Ct. 677. The Court noted that the communications were made by employees of Upjohn acting at the direction of their corporate superiors in order to secure legal advice from counsel, the information contained communications about matters within the scope of their duties, and the employees were aware that they were being questioned so that the corporation could obtain legal advice. The Court stated, however, "the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Id.* at 395, 101 S.Ct. 677. "[The] protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning the fact is an entirely different thing. The client cannot be compelled to answer the question, 'what did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.* at 395–396, 101 S.Ct. 677.

■ More recently, in *Gould v. City of Aliquippa*, 750 A.2d 934 (Pa.Cmwlth.2000), it was argued that oral statements taken by the City's attorney from City employees who witnessed an accident were not protected by the attorney-client privilege because no attorney-client privilege exist-

ed with those individuals. Relying on *Upjohn*, we held that those statements were protected by the attorney-client privilege, stating: "entities may claim the privilege for communications between their attorney and their agents or employees who are authorized to act on behalf of the entities." *Id.* at 937. Because there is no allegation in this case that the employees involved in this dispute were not authorized to act on behalf of Concern, based on *Upjohn*, the trial court erred in determining that no attorney-client privilege existed for that reason.

The difficulty presented in this case is that while the documents were provided to Fowler, only certain sentences from them were redacted and not made discoverable by Concern. In these cases, our review of the redacted portions of the documents is that they could be innocuous recountings of what occurred. Essentially, counsel for Concern is arguing that anything is protected; no statements that may harm its case can be discovered.

As to the Bonnie Jones' memo to Concern's attorney detailing her conversations with the Borough Offices, in addition to finding that Jones was not a client of Concern's attorney, the trial court also determined that the redacted portion of her memo—exactly one sentence—was nothing more than Jones recounting her knowledge of the incident and was not privileged for that reason. Concern argues that this document, as the others, was privileged because Jones and the other employees were specifically requested to communicate her knowledge, thoughts, opinion and mental impressions to Concern's attorney in anticipation of litigation in exchange for legal advice regarding the incident. Because that issue was never addressed by the trial court, the case is remanded for such a determination.

Regarding Mark Schettler's chronological case record excerpts, the trial court only determined that they were not privileged because he was not a client of Concern's attorney. Because that cannot be a reason for denying that the privilege exists, *Upjohn*, on remand, the trial court must also make a determination of whether the redacted portion of Schettler's document—also one sentence—was protected by the attorney-client privilege as set forth in Pa. R.C.P. No. 4003.3.

Finally, regarding the file notes of Greg Girolamo of which there are several entries redacted, the trial court stated that whether Girolamo was an employee authorized to act on behalf of Concern was not an issue because his file notes did not embody a communication from a client to his attorney but only mental notes written after Girolamo had a conversation with counsel. Similarly, because no determination was made whether the document was created and provided to counsel at counsel's request or for the purpose of obtaining legal advice, the trial court must also make these determinations on remand.

## B. Work Product

■ The "work product rule" is closely related to the attorney-client privilege but is broader because it protects any material, regardless of whether it is confidential, prepared by the attorney in anticipation of litigation. The doctrine was first set forth by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), protecting the mental impressions, conclusions, notes, memoranda, theories and research of an attorney from disclosure during discovery in actions governed by the Federal Rules of Civil Procedure. It was premised on the reasoning that this type of privacy was "the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote

justice and to protect their clients' interests." *Id.* at 511, 67 S.Ct. 385. The doctrine has been adopted by all of the states, including Pennsylvania, at Pa. R.C.P. No. 4003.3, which provides that discovery shall not include disclosure of the mental impressions, conclusions, opinions, memoranda, notes or summaries, legal research or legal theories of a party's attorney. Since *Hickman,* the doctrine has been expanded to cover documents prepared for attorneys by their agents, i.e., investigators, in anticipation of litigation. *See U.S. v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Commonwealth v. Noll,* 443 Pa.Super. 602, 662 A.2d 1123 (1995) (report of accident reconstruction expert hired by attorney protected by work-product rule).

In this case, while none of the documents in question were created by Concern's attorney, because no finding was made as to whether the documents were made in anticipation of litigation for use by Concern's attorney or for the purpose of obtaining legal advice, we cannot determine whether the documents are protected under the work-product rule and remand to the trial court for such a determination.

### C. Discovery Rules

As to Concern's argument that Pennsylvania Rules of Civil Procedure, Nos. 4003.1, 4003.3 and 4011, prevent discovery of privileged documentation, because we cannot determine whether the documents are privileged at this juncture, we also cannot determine whether they fall within documents protected under the discovery rules and remand to the trial court for that determination as well.

Accordingly, Amtrak's appeal is quashed because it is not a collateral order. The trial court's order denying Concern's motion for a protective order is vacated and the matter is remanded for further findings in accordance with this decision.

This decision was reached prior to the death of Senior Judge Rodgers.

### ORDER

AND NOW, this *21st* day of *November,* 2001, the order of the Court of Common Pleas of Chester County dated July 13, 2000 pertaining to Concern's motion for a protective order is vacated and the matter is remanded for further findings in accordance with this decision. Amtrak's appeal is quashed because it is not a collateral order and its petition for review is dismissed.

RODGERS, Senior Judge, Dissenting.

I respectfully dissent only from that portion of the majority opinion holding that counsel for Concern can never waive the attorney-client privilege by failing to timely file objections. *Birth Center v. St. Paul Companies, Inc.,* 727 A.2d 1144 at 1164 (Pa.Super.1999) (issue of confidentiality waived due to failure to object to discovery). *See also Nissley v. Pennsylvania Railroad Co.,* 435 Pa. 503, 259 A.2d 451 (1969). The holding by the majority allows the issue to be raised at any time, even after trial and appeal.

Thus, I would affirm the trial court's order denying Concern's motion for a protective order.