J-A03037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HARRY J. LAFFERTY; MICHAEL D. KIRN; ROBERT T. KIRN; JOHN J. ROEDELL; JOHN M. FERRIS; ROEBERT F. FERRIS; AND FACOWEE ACRES, L.L.C. | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : : | No. 724 MDA 2020 |
| THOMAS D. FERRIS | : | |

Appeal from the Order Entered April 16, 2020
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2008-1941 CP

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 04, 2021**

Harry J. Lafferty, Michael D. Kirn, Robert T. Kirn, John J. Roedell, John M. Ferris, Robert F. Ferris (Robert), and Facowee Acres, L.L.C. (Facowee Acres) (collectively, Plaintiffs) appeal from the order, entered in the Court of Common Pleas of Susquehanna County, granting Appellee Thomas D. Ferris's (Ferris/Defendant) motion to enforce and directing payment of his one-third share of escrowed monies from a mineral lease.  After careful review, we reverse and remand.

In a prior decision, our Court summarized the relevant facts underlying this case as follows:

> In August 1998, Ferris and [Plaintiffs] created Facowee Acres, LLC, [] a limited liability company.  On October 4, 1998, Ferris and his brother, Robert [] (collectively, Brothers), executed an

agreement of sale for a 100-acre parcel of land in Susquehanna County (the Property), with the intent that the land would be used as a hunting lodge for members of Facowee Acres. [Plaintiffs] and Ferris (collectively, Members) comprised the membership of Facowee Acres. In December 1998, the Brothers executed a mortgage on the Property; the Property was deeded to them as tenants-in-common. Each of the Members of Facowee Acres orally agreed to pay, over time, the mortgage and other related costs for the Property. Upon payment in full by the Members, the Brothers would transfer the Property to the Members, who would then transfer the Property to Facowee Acres.

In 2004, Ferris purchased a 4.4-acre parcel adjacent to the Property (Adjacent Property) in his own name. The Members of Facowee Acres agreed to reimburse Ferris the full purchase price of the Adjacent Property. Ferris subsequently transferred title to the Adjacent Property to himself and his brother, Robert. Over the years, [Members] used the Property and Adjacent Property for hunting. Improvements were also made on the Property. In October 2004, the deed to the Property and the deed to the Adjacent Property were consolidated into one deed.[1]

In 2007, Ferris told the Members that he wanted to sell back his interest in Facowee Acres. However, Ferris refused to convey the properties to the Members, in accordance with their prior oral agreement. Further, without the consent of the other Members of Facowee Acres, the Brothers used the Property and the Adjacent Property as collateral for a $125,000 equity line of credit for their own benefit. Additionally, in August 2008, for an up-front payment of $28,500, the Brothers executed a natural gas lease with Chesapeake Appalachia, LLC (Chesapeake) for the Property and Adjacent Property.

On December 23, 2008, [Plaintiffs] initiated the instant action in equity against Ferris seeking reformation of the deed to include their names; the complaint also included counts for unjust enrichment, promissory estoppel, and breach of contract. The

---

[1] Over time, payments made by the Members were deposited into a bank account owned by Robert. Expenses for the properties, including real estate taxes and maintenance expenses, were paid from that account. All Members, excluding Ferris, paid their respective shares of the mortgage and related expenses. *Lafferty v. Ferris*, Nos. 1131 & 1619 MDA 2016 (Pa. Super. filed Sept. 21, 2017) (unpublished memorandum decision), at 3.

- 2 -

complaint alleged that "[t]he members of Facowee Acres, including but not limited to, defendant [] Ferris, intended and agreed that subsequent to the purchase of the Property, the Deed to Robert [] and [] Ferris would be reformed to reflect the names of all of the members of Facowee Acres as owners of the Property." Complaint, 12/23/08, at ¶ 21.  Ferris filed an answer and counterclaim averring that he is not a member of Facowee Acres, denying any oral agreements existed in relation to reforming the deed to reflect Facowee Acres as the true owner of the properties, and seeking "a fair and equitable partition of the [Property and the Adjacent Property]."  Ferris Counterclaim, 4/3/09, at 8.

Following a non-jury trial, the court entered an order determining that an enforceable oral agreement existed between Ferris and [Plaintiffs].  Accordingly, on January 11, 2016, the court entered an order dismissing Ferris's counterclaim and directing the Brothers [to] execute a special warranty deed conveying title to the Property and the Adjacent Property to [Plaintiffs] and Ferris, in their respective proportionate shares.  Ferris was also ordered to pay any unpaid principal and interest in connection with the mortgage within 30 days of the order, and the county prothonotary was directed to "release all monies, principal and accumulated interest escrowed pursuant to [the c]ourt [o]rder relating to this matter to Facowee Acres, LLC, Robert F. Ferris and Thomas D. Ferris within (30) days of this Order."  Order, 1/11/16, at ¶ 3.[2]  Finally, **the order designated the respective interests of the parties with regard to the special warranty deed and the oil and gas lease as follows:  Lafferty (1/9th); M. Kim (1/9th); Roedell (1/9th); John J. Ferris (1/9th); Ferris (1/9th); R. Kim (1/9th); and Robert F. Ferris (3/9th).**

On January 20, 2016, Ferris filed a post-trial motion for a new trial, raising 40 claims of trial court error.[3]  On May 31, 2016,

---

[2] The January 11, 2016 order also directed the Brothers to "assign all their stated interest in an oil and gas lease regarding the subject properties, leased to Chesapeake Appalachia, L.L.C.[,] its successors and assigns, to the grantees of the special warranty deed called for in paragraph 1 of this order in their respective shares."  Order, 1/11/16, at ¶ 4.

[3] In his post-trial motion, Ferris raised one issue with regard to the oil and gas lease:  "The Court erred in not recognizing Robert Ferris's attempt to obtain a

[Plaintiffs] filed a praecipe to enter judgment. ***See*** Pa.R.C.P. 227.4(b).[4]  On June 27, 2016, the trial court entered an order denying Ferris's post-trial motions.  On July 13, 2016, Ferris filed a notice of appeal[5] from the June 27, 2016 order.[6]  On August 18, 2016, while Ferris's appeal was pending, [Plaintiffs] filed a motion to enforce the trial court's January 11, 2016 order.  In the motion, [Plaintiffs] alleged that "[g]iven the [c]ourt's decision recognizing the respective interest[s] of the Plaintiffs and the Defendant in the subject real estate . . ., distribution of the monies, principal[,] and accumulated interest escrowed to only Facowee Acres, [] Robert [] and [] Ferris would be inconsistent with the Order which recognizes the interests of Plaintiffs and Defendant[.]"  Plaintiffs' Motion to Enforce, 8/18/16, at ¶ 19.  On August 23, 2016, the trial court entered an order granting [Plaintiffs'] motion to enforce.

On September 9, 2016, the court held a hearing on [Plaintiffs'] motion to enforce the judgment.  At the hearing, [Plaintiffs'] counsel again argued that the court's January 11, 2016 order incorrectly directed that the monies be distributed to three entities/people, rather than [all] seven Facowee Acres members.  N.T. Motion to Enforce Hearing, 9/9/16, at 14.  On September 16, 2016, the court entered an order again granting [Plaintiffs']

---

gas lease on the property in [only] his name."  Motion for New Trial, 1/20/16, at ¶ 22.

[4] Unlike the Rules of Criminal Procedure, which require a court to act within 120 days of the filing of the post-trial motion or it will be deemed denied by operation of law, ***see*** Pa.R.Crim.P. 720(B)(3), the Rules of Civil Procedure do not provide a similar automatic mechanism.  Rather, a party is required to praecipe for entry of judgment to move the case forward where the court has not decided the motion within 120 days after its filing.

[5]  ***See Lafferty v. Ferris***, 1131 MDA 2016 (Pa. Super. filed July 13, 2016) (non-precedential decision).

[6] Plaintiffs prematurely filed a notice of appeal on May 3, 2016, prior to the disposition of Ferris's post-trial motions.  Our Court quashed that appeal *via* order.  ***See Lafferty v. Ferris***, No. 712 MDA 2016 (Pa. Super. filed June 14, 2016).

motion to enforce, but also modifying its January 11, 2016 order by requiring a general warranty deed be executed to transfer title of the property and adjacent property to Facowee Acres. Ferris filed a notice of appeal[7] [for each of] the August 23, 2016 and September 16, 2016 orders. Our Court consolidated Ferris's two separate appeals for ease of disposition. *See Lafferty v. Ferris*, Nos. 1131 & 1619 MDA 2016 (Pa. Super. filed Sept. 21, 2017) ([non-precedential decision]).

On September 21, 2017, our Court concluded that the trial court lacked jurisdiction to enter the August 23, 2016 and September 16, 2016 orders[,] where the trial court did not expressly grant reconsideration within 30 days following its June 27, 2016 order denying Ferris's post-trial motion, and where Ferris had already filed a notice of appeal divesting the trial court of jurisdiction. Accordingly, we determined that the orders were void and vacated them. *Id.* [Plaintiffs] filed an unsuccessful motion for reargument in this Court and [an] unsuccessful petition for allowance of appeal with the Supreme Court of Pennsylvania. *See Lafferty v. Ferris*, No. 878 MAL 2017 (Pa. filed May 15, 2018) (order denying petition for allowance of appeal).

[Plaintiffs] again orally moved to modify the trial court's January 11, 2016 order. After considering the parties' briefs on the issue, on November 28, 2018, the court granted the motion to modify, amending the third paragraph of the January 11, 2016 order "to [now] direct that the Susquehanna County Prothonotary release all natural gas royalty monies, principal and interest, escrowed pursuant to court order to the parties according to their respective interests as set forth in paragraph 7 of the [court's] January [11,] 2016 order." Trial Court Order, 11/28/18, at ¶ 2. On December 17, 2018, Ferris filed a motion to reconsider that was denied two days later. Ferris filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

*Lafferty, et al. v. Ferris*, 2024 MDA 2018 (Pa. Super. filed July 22, 2019)

(non-precedential decision) (emphasis added). On appeal, our Court vacated

---

[7] *See Lafferty v. Ferris*, No. 1619 MDA 2016 (Pa. Super. filed Sept. 30, 2016) (non-precedential decision).

the order as void, concluding that the trial court was without jurisdiction to modify its January 11, 2016 order where there was no extrinsic fraud, fatal defect apparent on the face of the record, or extraordinary cause to justify the court's intervention. *Id.* at *11.

On March 9, 2020, Ferris filed a motion to enforce the order, asserting that Paragraph 3 of the order entitled him to 1/3rd of the escrowed monies[8] from the lease bonus.[9]  Plaintiffs filed a response opposing enforcement of the order, arguing that because paragraph 3 of the January 11, 2016 order does not specify the percentages of the escrowed funds that each party was to receive, the court should interpret that paragraph consistently with Paragraph 7 of the order—which lists the respective interests of the grantees of the deed as 1/3rd (Robert), 1/9th (Ferris) and 5/9th (Facowee Acres' remaining 5

---

[8] The lease consists of two parts:  the lease bonus and royalties.  The amount in escrow was $287,500.00—the total amount of the Lease Bonus.  Royalties are the monies realized for extracted sources.

[9] "An oil and gas lease gives the lessee the right[,][ but not the obligation[,] to produce oil and gas within a specified area for a certain amount of time, as defined in the terms of the lease."  https://medium.com/mineralinsight/an-introduction-to-oil-and-gas-lease-bonuses-da452ba994db#:~:text=What%20Is%20a%20Lease%20Bonus%3F%20An%20oil%20and,of%20time%2C%20as%20defined%20in%20the%20terms%20 (last visited 4/20/21).

> The current industry standard is to issue what is known as a "paid up lease[,]" [] meaning the lessee [here, Chesapeake] pays the lessor [here, the Ferrises] a lump sum of money, known as a lease bonus, at the time the lease is signed. In exchange, the lessee receives the rights to extract minerals from the land at any point during the term of the lease.

*Id.*

members). On April 16, 2020, the court entered an order distributing the escrowed monies in paragraph 3 in equal shares to three parties: Facowee Acres (5 members included therein) ($1/3^{rd}$ share); Thomas Ferris ($1/3^{rd}$ share); and Robert Ferris ($1/3^{rd}$ share). In an opinion accompanying its order, the court noted that it was

> **constrained to read paragraph 3 [of] the order as it is written even if the court itself knows that paragraph 3 was not drafted properly**. Paragraph 3 provides that the escrowed natural gas monies are to be released to Facowee Acres, Robert F. Ferris[,] and Thomas D. Ferris. Although [p]aragraph 3 fails to specify the interest each of the parties have in the natural gas royalties as of January 11, 2016, [p]aragraph 3 also fails to specify a division different than equal shares between the respective parties, i.e., one-third share each. Plaintiffs['] request will be granted and the court will direct that the escrowed monies be split into three equal shares [among] Facowee Acres, Robert F. Ferris and Thomas D. Ferris.

Trial Court Opinion, 4/16/20, at 4-5 (emphasis added). Defendant filed a motion for reconsideration on April 27, 2020. On May 15, 2020, the trial court denied the motion. On May 18, 2020, Plaintiffs filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[10] On appeal, Plaintiffs raise the following issues for our review:

(1)   Whether the trial court committed reversible error in failing to interpret Paragraph 3 of the January 11, 2016 [o]rder and instead finding that the Superior Court's July 22, 2016 [o]rder stating that the January 11, 2016 [o]rder could not

_____

[10] On June 4, 2020, the trial court issued a Rule 1925(a) statement indicating that "[t]he reasons for [its] decision for the matters complained of by Plaintiffs are contained in the Opinion and Order dated and filed April 16, 2020." Pa.R.A.P. 1925(a) statement.

> be modified precluded the trial court from *interpreting* the January 11, 2016 [o]rder.
>
> (2) Whether the trial court committed reversible error by modifying the January 11, 2016 [o]rder to require the escrowed monies to be split into three equal shares where said Paragraph fails to specify the interest of each party in the escrowed monies, and a 1/3[rd] split between the parties identified in Paragraph 3 is contrary to the interest of the parties as expressly identified in the [o]rder.

Appellants' Brief, at 6 (emphasis in original).

Plaintiffs argue that the trial court's April 16, 2020 order improperly "modified" the court's original January 11, 2016 order when it "required equal distribution of the Lease Bonus." Appellant's Brief, at 19. They urge us to remand the case so that the trial court can *interpret* "paragraph[s] 3 and 7 [of the January 11, 2016 order] as consistently as possible." *Id.* Plaintiffs claim that if the trial court had properly interpreted the order, "it would have resulted in a distribution of the Lease Bonus as follows: one-ninth to Thomas D. Ferris, one-third to Robert F. Ferris—because those percentages are specifically set forth in paragraph 7—and five-ninths to Facowee Acres, LLC[,] by default." *Id.* at 19-20.[11]

At first blush it may appear that any decision other than, again, finding the trial court was without jurisdiction to enter the appealed order would create internal inconsistencies with our prior panel decisions and violate the

---

[11] As the original order states, the lease bonus is to be distributed equally—or in thirds—to Ferris, Robert, and Facowee Acres. Facowee Acres is comprised of five members (Members). Accordingly, it would result in 1/15th of a share to be distributed to each of the Members. Plaintiffs would have each Member receive a 1/9th share.

"law of the case" doctrine. *See Weeast v. Borough of Wind Gap*, 677 A.2d 375, 376 (Pa. Commw. 1996) ("[Under] the 'law of the case doctrine,' . . . issues decided by an appellate court on a prior appeal shall not be reconsidered on a second appeal. [A] decision by an appellate court on a prior appeal becomes *res judicata*, the law of the case, and therefore unamenable to further review.") (citations omitted).

However, due to the trial court's admission in its April 16, 2020 opinion that "paragraph 3 [of the January 11, 2016] was not drafted properly," we are compelled to reverse. In *Jackson v. Hendrick*, 746 A.2d 574 (Pa. 2000), our Supreme Court recognized that courts may modify their orders beyond normal time limits and take other corrective measures "in cases where it would have been inequitable for parties to suffer consequences of the court's errors." *Id.* at 576. Moreover, in *Amtrak v. Fowler*, 788 A.2d 1053 (Pa. Commw. 2001), our sister court, the Commonwealth Court of Pennsylvania, reiterated the exceptional circumstances under which a court is permitted to depart from the "law of the case."

> The departure from either the coordinate jurisdiction[12] or the law-of-the-case doctrine is allowed only in exceptional circumstances where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding

---

[12] The coordinate jurisdiction rule "falls within the 'law of the case' doctrine which embodies the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court in the earlier phases of the matter." *Id.* (citation omitted). It is premised on the "policy of fostering finality in pre-trial proceedings to promote judicial economy and efficiency." *Id.*

> was clearly erroneous and would create a manifest injustice if
> followed.

*Id.* at 1060, citing *Commonwealth v. Starr*, 664 A.2d 1326 (Pa. 1995).

Under the current facts, we conclude that to affirm the trial court's order as it now stands "would clearly be erroneous and would create a manifest injustice [to the Plaintiffs] if followed." *Id.*

As Plaintiffs point out, the trial court's original order is inconsistent with the distribution schedule set forth in the court's January 11, 2016 order, specifically paragraph 7. In fact, the court acknowledges that "although [p]aragraph 3 fails to specify the interest each of the parties ha[s] in the natural gas royalties as of January 11, 2016, [p]aragraph 3 also fails to specify a division different than equal shares [among] the respective parties, i.e., one-third share each." Trial Court Opinion, 4/16/20, at 5. Equipped with the court's opinion clarifying its original intent to distribute the gas royalty shares among the parties, we conclude that: (1) reversing our Courts' prior orders will not violate the "law of the case" doctrine, *Starr*, *supra*; *Amtrak*, *supra*; and (2) maintaining the current language of paragraph 3 of the January 11, 2016 order would make it "inequitable [for the Plaintiffs and cause them] to suffer consequences of the court's errors." *Jackson*, *supra* at 576. Accordingly, we remand the matter for the trial court to include the proper distribution language in paragraph 3 of the January 11, 2016 order.[13]

_____

[13] Upon remand, the court shall amend paragraph 3 of its January 11, 2016 order to reflect the distribution schedule outlined in paragraph 7 of that same

Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/04/2021

---

order and apply that schedule as it pertains to the escrowed royalties from the mineral lease as follows:

- 1/3rd (or 3/9ths) to Thomas D. Ferris
- 1/9th to Robert F. Ferris
- 5/9th to Facowee Acres, LLC (5 remaining Members)