**Adhesive Specialists Inc. v. Concept Sciences Inc.**

C.P. of Lehigh County, nos. 2000-C-0183, 2000-C-1797 and 2000-C-2280.

*Seth Weber, Assistant United States Attorney* on behalf of Potential Party United States of America.
*Frank A. Baker III* and *John A. Orlando,* for defendants Concept Sciences, Heath and Ward.
*Marie H. Kramer,* for defendants Alfa Laval.
*Thomas B. Schmitt III*, for defendant ALEDco.
*Richard C. Biedrzycki,* for additional defendant Ashland.

GARDNER, *J.,* November 13, 2002—This matter is before the court on a motion and amended motion for a protective order brought by the United States of America through the United States Attorney's Office for return of a memorandum alleged to be protected by the attorney-client and attorney work-product privileges. A Department of Labor attorney, Maureen A. Russo, Esquire, prepared the memorandum outlining a criminal case against defendant Irl Ward. For the reasons expressed

below, we deny the motion and amended motion and direct that the memorandum be disseminated by the United States of America to counsel for all parties.

These consolidated cases arise from an explosion on February 19, 1999, at the facility of defendant Concept Sciences Inc. at 749 Roble Road, Allentown, Lehigh County, Pennsylvania. Numerous plaintiffs brought suit as a result of this explosion. Defendant Concept Sciences filed joinder complaints against numerous additional defendants whom they allege are responsible for the damages. In addition, a number of parties have filed cross-claims or counterclaims against each other. The complaining parties seek personal and property damages under theories of strict liability, negligence, breach of contract and breach of warranty.

Concept Sciences was in the business of manufacturing a solution know as hydroxylamine which is used to clean computer chips. At the time of the explosion at its plant, Concept Sciences was attempting to purify and manufacture hydroxylamine in a 50 percent aqueous solution. Concept Sciences purchased some of its equipment for its manufacturing facility through additional defendant ALEDco Inc. One of the many pieces of equipment purchased from ALEDco by Concept Sciences was an IP800 Peristalic Pump. Concept Sciences contends that the explosion on February 19, 1999, was caused by the malfunction of the pump.

Defendant Irl Ward was the president of Concept Sciences Inc. Defendants and additional defendants Alfa Laval Pumps Inc.; Alfa Laval Flow Inc.; Alfa Laval Pumps, a Division of Alfa Laval Flow Inc.; and Alfa Laval Flow GmbH (collectively Alfa Laval) allegedly manufactured and distributed the pump. More specifically, ALEDco ordered the pump from Alfa Laval Pumps Inc.,

in Kenosha, Wisconsin. Alfa Laval Pumps Inc. in turn ordered the pump from Alfa Laval Flow GmbH. Alfa Laval Flow GmbH shipped the pump to Alfa Laval Pumps Inc. in Kenosha, Wisconsin. Alfa Laval Pumps Inc. shipped the pump to ALEDco in Allentown, Pennsylvania, which then sold the pump to Concept Sciences Inc.

The United States of America's motion for a protective order and for return of a privileged government attorney work-product document dated September 13, 1999, was filed May 17, 2001; and the United States of America's amended motion was filed August 30, 2001.[1]

Defendants' brief in opposition to the motion for a protective order filed by the United States of America, a nonparty was filed June 5, 2001, on behalf of defendants and additional defendants Concept Sciences Inc.; Irl E. Ward; Dawn L. Ward[2] and Brian D. Heath (collectively, the Concept Sciences defendants). These parties filed a response to the government's amended motion on September 5, 2001.

The response of additional defendant Ashland Inc.[3] to the United States of America's motion for a protective

---

1. The United States of America originally filed a brief, and not a motion. The United States Attorney filed his amended motion on August 30, 2001, to correct this procedural oversight. The delay in filing the amended motion is attributed to a stay order of the Commonwealth Court of Pennsylvania involving the insolvency of liability carrier Reliance Insurance Company, and not because of any lack of diligence on the part of the government.

2. Dawn L. Ward is the wife of additional defendant Irl Ward. Although Mrs. Ward is not a party to any of the three cases involved in this motion, she is a defendant in the companion case of *Adams v. Ward,* case no. 2001-C-470.

3. Additional defendants Ashland Inc.; Ashland Chemical Inc., a subsidiary of Ashland Oil Inc.; Ashland Oil Inc.; and Ashland ACT are collectively referred to as Ashland.

order and for return of a privileged work product document dated September 13, 1999, was filed June 6, 2001.

In its motion, the government seeks return of a 50-page memorandum dated February 13, 1999, prepared by Attorney Russo addressed to Michael R. Stiles, United States Attorney for the Eastern District of Pennsylvania. The memorandum outlines the basis of a criminal indictment against Dr. Irl Ward.[4]

We conducted a hearing on this matter on April 30, 2002.[5] At the hearing, the government presented the testimony of Pennsylvania State Police Lieutenant Scott R. Snyder, Pennsylvania State Trooper Paul S. Romanic, Attorney Russo, and the stipulated testimony of Marie H. Kramer, Esquire (an attorney for Alfa Laval). The government introduced nine exhibits. Additional defendant Ashland introduced one exhibit.

Based upon the pleadings, record papers, stipulations, concessions of counsel, exhibits, and testimony of the witnesses at the hearing, the pertinent facts are as follows.

## FINDINGS OF FACT

After the February 19, 1999, explosion at the Concept Sciences' facility, a number of agencies investigated the

4. The undersigned reviewed the memorandum which is the subject of the within motion for a protective order in camera. See the In Camera Review section of this opinion at pp. 272-75, below.

5. The hearing was originally scheduled for September 11, 2001. However, because of the tragic events of that day involving terrorists hijacking four airplanes and the subsequent crashing of those aircraft into the World Trade Center, the Pentagon, and a field in Western Pennsylvania, the hearing did not commence. After an off-the-record discussion between the undersigned and counsel, the hearing was postponed.

circumstances surrounding this fatal blast. The Pennsylvania State Police, Pennsylvania Fire Marshal, Lehigh County District Attorney, Occupational Safety and Health Administration, United States Department of Labor and the United States Attorney all participated in different aspects of the investigation of this incident.

To facilitate this investigation, there was a cooperation agreement between the agencies (OSHA, Department of Labor, Pennsylvania State Police and Pennsylvania Fire Marshal) and the prosecutors' offices (Lehigh County District Attorney and the United States Attorney for the Eastern District of Pennsylvania).

As a part of the cooperation between the agencies, the district attorney and state police asked the Department of Labor to share its investigatory files with them. In response to those requests, by letters dated March 2 and March 10, 1999, the Department of Labor sent letters stating the terms of cooperation. Those terms included a requirement that the requesting agency set forth in writing the "specific information being requested, the purpose of requesting it and agreeing to maintain its confidentiality." In addition, the letter stated: "In the event that a request is made by an outside party for information in the file, we ask that you contact OSHA before making any disclosure. Further, please return the file to OSHA when you have completed your work with it."[6]

By letter dated March 18, 1999, Pennsylvania State Police Lieutenant Scott R. Snyder sent a return letter to George J. Tomchick Jr., Allentown office area director of OSHA, indicating that the Pennsylvania State Police

6. See government exhibits B and C.

were interested in obtaining the cooperation of OSHA in the investigation and specifically, the "investigatory findings and reports including findings of expert examiners . . . ." In addition, Lieutenant Snyder stated that any reports would be made a part of the Pennsylvania State Police investigatory file and would be classified as confidential.[7]

Pennsylvania State Trooper Paul Romanic (the lead state police investigator in the Concept Sciences explosion investigation) assisted the federal government in the grand jury investigation. He was on a list prepared pursuant to Federal Rule of Criminal Procedure 6(e) which authorized him to receive certain grand jury documents. Trooper Romanic worked closely with the United States Attorney's office during the investigation. He attended numerous meetings between the state police, district attorney and the United States Attorney to determine how the case should proceed.[8]

At some point between September 13, 1999 and January 8, 2001, during the period of cooperation between the various law enforcement agencies, the Pennsylvania State Police obtained the memorandum written by Attorney Russo.

On February 29, 2000, counsel for Alfa Laval sent a subpoena to produce documents or things for discovery pursuant to Pennsylvania Rule of Civil Procedure 4009.22 to Colonel Paul Evanko of the Bethlehem barracks of the Pennsylvania State Police. The subpoena requested:

---

7. Government exhibit B-1.

8. Government exhibit D.

"[The] entire file including but not limited to the fire department report, record, trip sheet and any and all supplemental reports, measurements, diagrams, photographs, photographic negatives, statements, memoranda, notes and anything else having to do with the explosion of February 19, 1999, at Concepts [sic] Sciences Inc. plant in the Lehigh Valley Industrial Park."[9]

On May 4, 2000, the petition of the Lehigh County District Attorney's office for a protective order pursuant to Pennsylvania Rule of Civil Procedure 4012(a)(1) was filed seeking a protective order from the subpoena served by counsel for Alfa Laval.[10] Alfa Laval Flow Inc.'s response to petition to quash subpoena and enter protective order was filed June 20, 2000.

Oral argument was scheduled for September 5, 2000. At the request of the district attorney, that date was continued until December 12, 2000. The December 12, 2000 argument was again continued at the request of the district attorney until January 30, 2001. On January 30, 2001, prior to commencing oral argument, the district attorney withdrew his motion for a protective order. By order dated January 30, 2001, the undersigned granted the request to withdraw the motion for a protective order.

On January 8, 2001, counsel for Alfa Laval served a second subpoena on the Pennsylvania State Police in the

9. See paragraph 3 of the petition of the Lehigh County District Attorney's office for a protective order pursuant to Pennsylvania Rule of Civil Procedure 4012(a)(1) filed May 14, 2002.

10. At the time counsel for Alfa Laval sent the subpoena there were only two cases assigned to the undersigned: *Volz v. Concept Sciences Inc.,* case no. 1999-C-1736 and *Volz v. Ward,* case no. 1999-C-2390. Later, a number of other cases were consolidated with these two original actions. The two original cases have subsequently settled.

other cases assigned to the undersigned.[11] The subpoena demanded "any and all documents and things obtained or created by the Pennsylvania State Police in connection with its investigation of the February 19, 1999 explosion at Concept Sciences Inc., 450 Allenwood Drive, Allentown, Pennsylvania."[12]

At some time between January 17 and February 15, 2001, Trooper Romanic, at the direction of Lt. Scott Snyder (the criminal investigation section commander of the Bethlehem barracks of the state police), advised counsel for Alfa Laval that counsel could review the Pennsylvania State Police investigative file. There is no indication of any precautions taken to preserve the confidentiality of any documents in the possession of the state police prior to allowing counsel for Alfa Laval to review the documents.

There is no record evidence of any effort by the Pennsylvania State Police to advise, or contact, OSHA, the United States Department of Labor or the Office of the United States Attorney, about the subpoenas served by counsel for Alfa Laval. However, because of the close cooperation of all the agencies, and the efforts of the district attorney to quash the original subpoena, we conclude that some, or all, of these agencies knew about the efforts of the civil litigants to obtain the state police investigative file.

11. *Adhesive Specialists Inc. v. Concept Sciences Inc.,* case no. 2000-C-183, *Trugreen Limited Partnership, d/b/a Trugreen-Chemlawn v. Concept Sciences Inc.,* case no. 2000-C-1797, and *Bowers v. Alfa Laval Pumps Inc.,* case no. 2000-C-2280.

12. See paragraph 9 of government exhibit D, declaration of Trooper Paul Romanic.

On February 15, 2001, several representatives of the firm of Daller, Greenberg and Dietrich (counsel for Alfa Laval) visited the state police barracks in Bethlehem, Pennsylvania. They reviewed the documents and tagged a number of them for copying. Trooper Romanic was not in the office that day.[13]

On February 16, 2001, Trooper Romanic returned to his office and realized that there were two additional boxes which were not available for review by counsel for Alfa Laval. He contacted the firm of Daller, Greenberg and Dietrich and advised the attorneys that there were more documents to be reviewed.

On February 20, 2001, Attorney Marie H. Kramer of Daller, Greenberg and Dietrich went to the Bethlehem barracks to review documents, including the two additional boxes not previously made available. She took no notes concerning the documents, but telephoned Edward H. Greenberg, Esquire, of her firm who advised her to copy all of the documents responsive to the subpoena.

As part of her document review, Attorney Kramer saw the memorandum addressed to Attorney Stiles which had been prepared by Attorney Russo. This memorandum contained the heading *"Privileged Attorney Work Product"* on the front page. Attorney Kramer did not read the document but placed it with other documents for copying.

On February 26, 2001, a representative of Capitol Copying, a copy service hired by Daller, Greenberg and Dietrich, went to the Bethlehem State Police barracks

---

13. Government exhibit D, paragraph 11.

and copied the documents selected by Alfa Laval's attorneys.

After being copied, the documents were sent to Daller, Greenberg and Dietrich and further disseminated to the law firms of White and Williams LLP (counsel for the Concept Sciences defendants), Pepper Hamilton LLP (counsel for defendant and additional defendant ALEDco) and Pettit, Phelan and Biedrzycki (counsel for Ashland).

On April 23, 2001, Paul R. Bartolacci, Esquire, of the law firm of Cozen O'Connor (plaintiffs' counsel in the cases of *Adams v. Concept Sciences Inc.,* case no. 2000-C-3070 and *Adams v. Ward,* case no. 2001-C-470[14]), reviewed the discovery materials obtained from the state police at the offices of Daller, Greenberg and Dietrich.

Attorney Bartolacci spent an entire day reviewing documents and tabbed a number of documents which he wanted copied, including the memorandum prepared by Attorney Russo. None of the parties called Mr. Bartolacci as a witness at the hearing.

We conclude that Mr. Bartolacci reviewed the memorandum, at least to the extent that he concluded that he wanted a copy of it. One could infer that he read the entire document. Moreover, there is no indication whether he made any notes regarding his document review, whether he shared any of the information gleaned from his review of this document with any attorneys at his firm, or with his clients. However, all of these are reasonable possibilities.

---

14. Cozen O'Connor represents plaintiffs John H. Adams; James R. Redington; Jason Quick; Lehigh Realty Associates III; and Great Northern Insurance Company (collectively the Adams plaintiffs).

On April 23, 2001, during the review of the Pennsylvania State Police documents, Richard H. Maurer, Esquire, of the firm of White and Williams LLP, came across the Russo memorandum. He did not read the memorandum. Rather, he brought it to the attention of his superior, John A. Orlando, Esquire.

At the direction of Attorney Orlando, Attorney Maurer drafted a letter to Assistant United States Attorney Seth Weber stating that his firm was in possession of the memorandum and that it contained an indication that it was attorney work-product. Mr. Maurer stated that if the government had any concerns about the apparent widespread distribution of this document, a motion should be filed before the undersigned to whom a number of the civil cases had been assigned. Mr. Maurer sent a copy of this letter to all the other litigants in the civil cases.[15]

On April 24, 2001, Attorney Greenberg notified Attorney Bartolacci by letter that he would not be including the memorandum prepared by Attorney Russo in the documents to be produced because it contained material subject to the attorney-client privilege and the attorney work-product doctrine. Attorney Greenburg's letter further stated that his firm was returning the document to the United States Attorney's office.

By letter dated May 1, 2001, Attorney Weber advised Attorney Maurer that the government wanted its document back and that if it did not get it back by May 4,

---

15. See letter from Richard H. Maurer, Esquire, to Assistant United States Attorney Seth Weber dated April 23, 2001. (United States of America's motion for a protective order and for return of a privileged government attorney work-product document dated September 13, 1999, exhibit G).

2001, it would file a motion in Lehigh County court to compel the return of the document.[16]

By letter dated May 8, 2001, Attorney Weber referred to a telephone conversation between himself and Richard C. Biedrzycki, Esquire. In that letter, Attorney Weber confirms that Attorney Biedrzycki would not return the memorandum unless the government agreed that if the Lehigh County court decided that the privilege had been waived, then the U.S. Attorney's office would return the document. Attorney Weber would not agree to such a stipulation. Therefore, Attorney Biedrzycki refused to return the document to the government.

At oral argument, Attorney Biedrzycki conceded that he had reviewed the memorandum prepared by Attorney Russo. Moreover, he provided the court with a sealed marked-up copy (Ashland exhibit 1) which purports to designate sections of the memorandum which Attorney Biedrzycki does not believe constitute attorney work-product (because they are factual recitations and not the mental impressions of the drafter). In addition, Attorney Biedrzycki conceded that portions of the memorandum might fall within the attorney work-product privilege.

Moreover, Attorney Biedrzycki informed the court and the other parties that his firm had an agreement with the law firm of Montgomery McCracken to split the costs of copying the state police files. Montgomery McCracken represents defendant and additional defendant Puritan Products in some of these cases. Attorney Biedrzycki stated his belief that Montgomery McCracken has re-

---

16. Government exhibit L.

ceived a copy of the memorandum, but does not know what they have done with it.

Some time after creation of the memorandum, but before dissemination of the memorandum to the parties, Irl Ward was indicted by a federal grand jury. During pendency of this motion, the criminal charges against Dr. Ward were dismissed by Judge R. Barclay Surrick of the United States District Court for the Eastern District of Pennsylvania. There is no indication that a new indictment has been filed.

## DISCUSSION

On May 17, 2001, the government filed the within motion for a protective order. In its motion, the government contends than the memorandum prepared by Attorney Russo is privileged under the attorney-client privilege or, in the alternative, under the attorney work-product doctrine. For the following reasons, we deny the government's motion.

## ATTORNEY-CLIENT PRIVILEGE

In Pennsylvania, the attorney-client privilege is codified at 42 Pa.C.S. §5928. It provides: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."

This privilege is intended to foster candid communications between counsel and client so that counsel can provide legal advice based upon complete information

obtained from the client. *National Railroad Passenger Corporation v. Fowler,* 788 A.2d 1053, 1064 (Pa. Commw. 2001). The attorney-client privilege protects only those disclosures which are necessary to obtain informed legal advice that might not be obtained otherwise and only applies where the client's goal is to obtain legal advice. *Joe v. Prison Health Services Inc.,* 782 A.2d 24 (Pa. Commw. 2001).

Because a federal government attorney prepared the memorandum, the Federal Rules of Evidence are pertinent. Federal Rule of Evidence 501 provides:

"Rule 501. General rule

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which state law supplies the rule of decision, the privilege of a witness, person, government, state, or political subdivision thereof shall be determined in accordance with state law." F.R.E. 501.

Accordingly, based upon the language of F.R.E. 501, whether the attorney-client privilege is applicable is to be determined by Pennsylvania law, rather than federal law. However, there are no "principles or rules of law unique to Pennsylvania that should control the resolution of our decision on these matters." *Rhone-Poulenc*

*Rorer Inc. v. Home Indemnity Co.,* 32 F.3d 851 (3d Cir. 1994).

In *Rhone-Poulenc* the United States Court of Appeals for the Third Circuit enunciated the traditional elements of the attorney-client privilege as follows. Communications between attorney and client are protected if:

"(1) the asserted holder of the privilege is or sought to become a client;

"(2) the person to whom the communication was made

"(a) is a member of the bar of a court, or his or her subordinate, and

"(b) in connection with this communication is acting as a lawyer;

"(3) the communication relates to a fact of which the attorney was informed

"(a) by his client

"(b) without the presence of strangers

"(c) for the purpose of securing primarily either

"(i) an opinion of law or

"(ii) legal services or

"(iii) assistance in some legal proceeding, and

"(d) not for the purpose of committing a crime or tort; and

"(4) the privilege has been

"(a) claimed and

"(b) not waived by the client." 32 F.3d at 862.

Documents may be protected from disclosure in discovery because they are privileged. However, the protection may be inapplicable to facts incorporated into the communication. *Id.*

The protection of the privilege extends only to *communications* and not to facts. A fact is one thing, and a communication concerning that fact is an entirely different thing. *Upjohn Company v. United States,* 449 U.S. 383, 395-96, 101 S.Ct. 677, 685-86, 66 L.Ed.2d 584 (1981); citing *City of Philadelphia v. Westinghouse Electric Corporation,* 205 F. Supp. 830, 831 (E.D. Pa. 1962).

Applying the *Rhone-Poulenc* test to the facts of this case, the United States government has failed to establish the existence of an attorney-client privilege. Although Attorney Russo, the author of the memorandum, testified that her client was OSHA,[17] the memorandum itself does not refer to a client, nor indicate the existence of a client. The memorandum does not indicate any specific communication from that client to Attorney Russo, nor that any communications were confidential. The memorandum does not indicate that the client's goal in making any disclosures was to obtain legal advice that might not be obtained otherwise.

The memorandum does not indicate that the client, as opposed to the United States Attorney, has claimed a privilege. Attorney Russo is employed by the United States Department of Labor, but there is no indication that the Labor Department is her "client" in this situation, nor that anyone at the Labor Department communicated anything to Attorney Russo.

The memorandum does indicate that it was prepared by Attorney Russo in anticipation of litigation. However, rather than representing a client, Attorney Russo's role

---

17. Notes of Testimony of the April 30, 2002 hearing at pp. 78 and 119.

in this matter appears to be more akin to that of a co-prosecutor together with United States Attorney Stiles, or as a consultant to the prosecutor. However, because the potential criminal prosecution was based upon the alleged violation by Concept Sciences and Irl Ward of a number of OSHA regulations, one could reason that the client here is OSHA, as testified by Attorney Russo; but nothing in the memorandum indicates that.

In this case the United States government is not contending that the Pennsylvania State Police is its client. Rather, it attempts to assert that the state police were within the circle of privilege composed of lawyer, client and their respective agents, including the Lehigh County District Attorney and the Pennsylvania State Police. The government bases its argument that the document is still privileged upon the confidentiality agreements between the law enforcement agencies and OSHA and the protection of grand jury materials. For the following reasons, we disagree.

The Pennsylvania State Police were not the addressee of the memorandum. Rather, it was addressed to United States Attorney Michael Stiles. The state police presumably obtained a copy of the memorandum from either OSHA or the United States Attorney.

Under traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else. *Westinghouse Electric Corporation v. Republic of Philippines,* 951 F.2d 1414, 1427 (3d Cir. 1991).

Assuming, however, that OSHA, or someone else, is the client of Attorney Russo in this scenario, and that an

attorney-client privilege exists, approximately 33 of the 50 pages of the Russo memorandum consist of facts (as opposed to communications) which are not subject to the protection of the attorney-client privilege.

Whoever Attorney Russo's client might be in this case, if anyone, delivery of the memorandum to the Pennsylvania State Police constituted a voluntary disclosure to a third party. This, in turn, constituted a waiver of the attorney-client privilege, even if the state police agreed not to disclose the communication to anyone else. In addition, even if the Pennsylvania State Police come within the alleged circle of privilege, the attorney-client privilege was waived when the document was disseminated to some of the civil litigants in these cases, even though the dissemination may have been inadvertent.

## ATTORNEY WORK-PRODUCT PRIVILEGE

The attorney work-product rule is closely related to the attorney-client privilege. However, its scope is broader because it protects any material, regardless of whether it is confidential, prepared by an attorney in anticipation of litigation. *National Railroad, supra.*

The doctrine was first enunciated by the United States Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In *Hickman,* the Supreme Court held that the mental impressions, conclusions, notes, memoranda, theories and research of an attorney should be protected from discovery in actions governed by the Federal Rules of Civil Procedure.

Our review of the Russo memorandum reveals that portions of it do contain the mental impressions, conclu-

sions, notes, memoranda, theories and research of Attorney Russo.[18] Therefore, in the absence of waiver, those portions of the memorandum would be protected from discovery. However, for the reasons expressed below, we conclude that the government has waived the attorney work-product privilege.

The attorney work-product doctrine is defined in Pennsylvania in Pa.R.C.P. 4003.3. In the federal system it is defined in F.R.C.P. 26(b)(3). However, these two rules are materially different in two respects.

First, F.R.C.P. 26(b)(3) permits discovery only when there is a showing of substantial need for the materials, and the party is unable, without undue hardship, to obtain the materials elsewhere. Under Pa.R.C.P. 4003.3 there is no need for a showing of substantial need.

Second, Pa.R.C.P. 4003.3 differentiates between the privilege afforded a party's attorney and other representatives of the party, whereas, F.R.C.P. 26(b)(3) places both a party's attorney and other representatives on equal footing.

Because there is a difference in the two discovery rules, and based upon Federal Rule of Evidence 501, we conclude that we must follow the Pennsylvania rule of procedure and not the federal rule of procedure. Accordingly, the civil litigants here are not required to make a showing of substantial need to obtain discovery of this document. Rather, we will follow the test agreed upon by the parties to resolve this dispute.

---

18. At the hearing, Richard C. Biedrzycki, Esquire, counsel for Ashland, who reviewed the memorandum, conceded that portions of the memorandum contained Attorney Russo's work product. N.T. 63, 100, 166, 192-94.

The parties all cite *U.S. v. Keystone Sanitation Company,* 885 F. Supp. 672 (M.D. Pa. 1994) for the factors which must be considered in determining whether the government has waived the attorney work-product privilege. In *Keystone Sanitation* the United States District Court for the Middle District of Pennsylvania stated:

"Many courts use the following factors to determine whether a document has lost its privilege through inadvertent disclosure: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measure taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving a party of its error." 885 F. Supp. at 676.

We note that factor (5), above, requires us to perform a type of balancing test to determine whether the memorandum has lost its privileged status.

Concerning the first factor, we conclude that the reasonableness of the precautions taken by the Pennsylvania State Police, the Lehigh County District Attorney, OSHA, and the United States Attorney's office fell short of what we would expect from law enforcement officials trying to protect the confidentiality of the criminal investigation of Irl Ward.

On January 30, 2001, Lehigh County District Attorney James B. Martin appeared before the undersigned and withdrew the Commonwealth's motion for a protective order, which was previously filed on May 4, 2000. A motion for a protective order is the mechanism prescribed by Pennsylvania law to prevent the disclosure of

this document. The withdrawal of this motion could have communicated to the Pennsylvania State Police that it was appropriate to give the civil litigants everything in the state police file.

In addition, we believe that the United States Attorney, OSHA, or both, were aware of the efforts of the civil litigants to obtain the files of the state police. They could have taken steps to ascertain what was going to be turned over to the litigants in these civil cases. If a document needed to be protected because of privilege, they could have either had their documents returned as set forth in the terms of the disclosure agreement, or filed their own motion for a protective order. However, neither the United States Attorney, nor OSHA, took either of these steps.

We conclude that the Pennsylvania State Police did what they should have done to protect the confidentiality of these documents (seek the help of attorneys, namely the district attorney of Lehigh County, to resist the subpoena). The documents were not disseminated to civil counsel by the state police until after this court's January 30, 2001 order granting the oral motion of the district attorney to withdraw the motion for a protective order. While it may have been prudent for the state police to review each item in the case file prior to showing it to counsel for Alfa Laval, the subpoena was broad enough to encompass everything in that file.

In light of the zeal of the civil litigants to obtain as much information about this explosion as attainable, we conclude that the precautions taken by the law enforcement agencies to protect this memorandum fall short of the precautions which reasonably could have been taken.

The volume of documents produced by the state police[19] does not justify the inaction of the government concerning protection of a document which it considered privileged and important to protect.

Nothing in this opinion should be construed as criticism by this court concerning the actions of the state police, OSHA, district attorney or the United States Attorney. We believe that the dissemination of this document was inadvertent.

The second factor of the *Keystone Sanitation* test is the number of inadvertent disclosures. In this case, the number of disclosures is relatively small in comparison to the number of possible disclosures. Twenty-three lawsuits were filed in Lehigh County and at least four were filed in Northampton County as a result of this explosion. There are many parties and attorneys involved. Because their interests are similar, many of the parties have agreed to share discovery with one another. The document was sent to, or seen by, only six of the numerous law firms involved.[20]

---

19. Capitol Copying, the copy service hired by Daller, Greenberg and Dietrich, came in at the direction of Attorney Greenberg and copied 12,814 documents that had been selected by the attorneys from the firm. The disputed 50-page memorandum was among those 12,814 documents. N.T. 150.

20. Although some of them did not read it, and some of them returned it, the five law firms which received the Russo memorandum were Daller, Greenberg and Dietrich, counsel for Alfa Laval; White and Williams LLP, counsel for the Concept Sciences defendants; Pepper Hamilton LLP, counsel for defendant and additional defendant ALEDco Inc.; Pettit, Phelan and Biedrzycki, counsel for defendant and additional defendant Ashland; and Montgomery McCracken, counsel for Puritan Products, a defendant and additional defendant in the cases of *Lumbermans Mutual Casualty Company v. Concept Sciences*

The third *Keystone Sanitation* factor is the extent of the disclosure. Richard C. Biedrzycki, Esquire, counsel for additional defendant Ashland, read the memorandum.[21] In addition, Attorney Paul Bartolacci, counsel for the Adams plaintiffs, spent a day in the offices of Daller, Greenberg and Dietrich reviewing the documents which were produced by the state police in response to the subpoena. Attorney Bartolacci marked the Russo memorandum as one he wanted copied.[22]

Because Attorney Bartolacci was not called as a witness, we are unaware of the extent of his review of this document. He may simply have done a cursory review of the document and marked it for copying. On the other hand, he may have thoroughly reviewed the memorandum, taken notes on it, and shared his findings with other members of his firm, his clients or other counsel.

In addition, Attorney Biedrzycki provided a copy of the memorandum to Montgomery McCracken, counsel for defendant and additional defendant Puritan Products because he had an agreement to split copying costs with Montgomery McCracken. It is unclear what Montgomery McCracken did with the memorandum. However, the extent of the disclosure may have been substantial.

---

*Inc.,* case no. 2001-C-474 and *Bowers v. Ashland Chemical Inc.,* case no. 2001-C-188. Paul Bartolacci of Cozen O'Connor, counsel for the Adams plaintiffs, reviewed the Russo memorandum but did not receive a copy of it. N.T. 25, 26, 179, 180, 182-85, 188, 191. Apparently, Norman Greenspan, Esquire, of Blank Rome who represented Mr. Ward in the pending federal criminal prosecution did not have a copy of the memorandum. N.T. 154-55, 187.

21. N.T. 183, 188.
22. N.T. 180.

The fourth *Keystone Sanitation* factor is the extent of any delay and measures taken to rectify the disclosure. Upon learning of the disclosure of the memorandum, the United States Attorney immediately contacted the firms of White and Williams and Daller, Greenberg and Dietrich. When Attorney Thomas B. Schmidt III of the Pepper Hamilton firm became aware that the government wanted its memorandum back, he returned it.

The United States Attorney did not contact Attorney Biedrzycki until May 8, 2001, two weeks after being notified of the disclosure.[23] There is no evidence that the United States Attorney ever contacted the law firms of Cozen O'Connor or Montgomery McCracken to ascertain the level of disclosure by those firms. In addition, the within motion was not filed by the government until 23 days after it learned of the disclosure of the memorandum.

In our view, the 23-day wait to file a motion constitutes a delay by the government in protecting the privileged nature of its document, especially in light of the language contained in the April 23, 2001 letter of Attorney Richard H. Maurer, counsel for defendant Concept Sciences.[24]

---

23. See government exhibit M.

24. The April 23, 2001 letter from Attorney Maurer to Assistant United States Attorney Seth Weber provides in part:

"In light of the apparent widespread distribution of this letter, I respectfully suggest that if your office has any concerns about this distribution, your office file a motion and direct it to the attention of the Honorable James Knoll Gardner, President Judge of Lehigh County to whom a substantial number of the above civil actions have been assigned.

"If I do not receive a motion from your office by Monday, May 14, 2001, I will assume that your office does not have concerns about the widespread distribution of the letter or any further distribution. Thank you."

Accordingly, we conclude that the government failed to act promptly to adequately protect its allegedly privileged document. Moreover, the government has failed to take corrective measures adequate to rectify the disclosure. Nor did the government sustain its burden of providing the court with a complete picture as to the nature and extent of the disclosure of the document.

Finally, we address the fifth *Keystone Sanitation* factor, which is whether or not the overriding interests of justice would be served by relieving the government of its error. For the following reasons, we conclude that justice will not be served by relieving the government of its error.

In this matter one plaintiffs' counsel and one (possibly two) defense counsel have reviewed the document. Counsel for the Concept Sciences defendants argue that their clients will be severely prejudiced if they are not permitted to review the government memorandum. They argue that the memorandum likely contains information which could be used at trial by the parties who have seen it, against their clients, who have not seen it.

In addition, the Concept Sciences defendants argue that disseminating the document to all parties to this lawsuit will not prejudice the government because the government's criminal prosecution against Irl Ward was dismissed by the federal court. For the following reasons, we agree.

In this determination, we are guided by the decision of the Third Circuit Court of Appeals in *In re Ford Motor Company,* 110 F.3d 954 (3d Cir. 1997). In *Ford Motor Company,* Judge (now Chief Judge) Becker stated:

" '[A]ttorneys cannot unlearn what has been disclosed to them in discovery'; they are likely to use such material for evidentiary leads, strategy decisions, or the like. More colorfully, there is no way to unscramble the egg scrambled by disclosure; the baby has been thrown out with the bath water." 110 F.3d at 963. (citations omitted)

The likelihood of unfair prejudice to the Concept Sciences defendants in this matter is great. Other parties in this litigation will have knowledge of the contents of this memorandum, and the Concept Sciences defendants will not. Without access to the memorandum, these defendants will have no way of knowing if certain information brought out at trial is the result of independent investigation or the product of information gleaned from the government memorandum.

We agree with defendants that the government will suffer no prejudice from dissemination of this document to all the civil litigants because its criminal prosecution of Irl Ward has been terminated by the federal court. Moreover, as stated by Judge Becker, the parties who have reviewed this memorandum cannot unlearn the information contained therein.

Accordingly, we conclude that the interests of justice would not be served by relieving the government of its mistake.

For all the above reasons, we conclude that the government has waived any attorney-client or attorney work-product privileges which it may have had in the memorandum prepared by Attorney Russo. A careful balancing of all the forgoing factors leads to the conclusion that the government did not adequately protect this document from disclosure, that while the actual number of the dis-

closures was relatively slight, the extent of those disclosures is unknown.

Moreover, we conclude that the government did not promptly file the within motion to adequately protect its privilege and failed to establish the full extent and nature of the disclosure. Other witnesses, including Paul Bartolacci, Esquire, and some from the firm of Montgomery McCracken, could have been called to shed light on the extent of the disclosure. By failing to call these witnesses, the government has failed to convince this court that the effect of this disclosure can be easily rectified by merely having everyone in possession of the document return it to the government.

Finally, we conclude that the Concept Sciences defendants will likely be prejudiced if they are not allowed to review this document. On the other hand, the government will suffer no prejudice by dissemination of the document to all the litigants.

## IN CAMERA REVIEW

The Russo memorandum was admitted into evidence as government exhibit N. Assistant United States Attorney Seth Weber provided a sealed envelope containing the memorandum. Moreover, Attorney Richard C. Biedrzycki marked as Ashland exhibit 1 a copy of the memorandum which he marked with a designation of which parts of the memorandum consists of recitations of facts (as opposed to communications) which he contends are not protected by the attorney-client privilege. Ashland exhibit 1 was introduced into evidence in a sealed envelope.

At the April 30, 2002 hearing in this matter, government Attorney Weber requested the undersigned to inspect the document in camera to determine whether the document is privileged under the attorney work-product doctrine.[25] Counsel for the only parties who formally responded to the government's motion for a protective order (Frank A. Baker III, Esquire, for the Concept Sciences defendants and Richard C. Biedrzycki, Esquire, for Ashland) each stated they had no objection to the undersigned reviewing the document.[26] Accordingly, the undersigned stated he would read the document.[27]

Thomas B. Schmidt III, Esquire, counsel for ALEDco, objected to the undersigned reading the document. He argued that the court did not need to read the document because there was "uncontroverted testimony" that the document constituted attorney work-product. He stated that the only issue is whether that protection has been waived, and that the court does not need to look at the document in camera to make that decision.[28] However, Attorney Schmidt did not have standing to object because his client did not formally answer the government motion for a protective order.[29]

John A. Orlando, Esquire, former counsel for the Concept Sciences defendants, indicated that at a prior meeting with the court on September 11, 2001, all counsel agreed that the memorandum when written was in fact attorney work-product, and because the only issue now

25. N.T. 81-82.
26. N.T. 83, 85.
27. N.T. 83.
28. N.T. 87, 92.
29. N.T. 88.

is whether that privilege was waived by the inadvertent disclosure of the document, there is no need for the undersigned to read it.[30] However, Mr. Orlando did not have standing to object because he was no longer counsel of record for the Concept Sciences defendants at the April 30, 2002 hearing.[31] Because of the tragic events of September 11, 2001 (see footnote 5, supra) counsel's agreement was not placed on the record at that time.

Government Attorney Weber indicated that if counsel would stipulate now to the stipulation suggested by Attorney Orlando, that the government would withdraw its request that the undersigned read the memorandum. However, Attorneys Biedrzycki,[32] Baker[33] and Schmidt[34] would not stipulate.

At the April 30, 2002 hearing the undersigned took under advisement the government request for an in camera review of the document.[35] However, the court advised counsel that if the court reviews one of the sealed copies of the document (the government's clean copy and Ashland's marked-up copy) in camera, that it will review both copies.[36]

In arriving at a decision in this matter, the undersigned first addressed the issue of whether or not any attorney-client or attorney work-product privilege had been waived, without reviewing the sealed documents. Our

---

30. N.T. 97-99.
31. N.T. 98.
32. N.T. 101.
33. N.T. 102.
34. N.T. 103.
35. N.T. 107, 188-89.
36. N.T. 193.

rationale was that if we concluded that the government had waived the privileges by its disclosure of the document, then the government would not be entitled to get the document back, even if it were privileged. However, in the process of deciding the waiver issue, we concluded that evaluation of the fifth factor of the *Keystone Sanitation* test would require a review of the document. This is, in part, because the fifth factor balancing test required us to determine whether the Concept Sciences defendants would be prejudiced, and to what degree, by not knowing the contents of the memorandum. Accordingly, we reviewed both sealed documents in camera at that time.

## CONCLUSION

For all the foregoing reasons, we deny the United States of America's motion for a protective order and for return of a privileged government attorney work-product document dated September 13, 1999, filed May 17, 2001, and we deny the United States of America's amended motion filed August 30, 2001. We direct that the memorandum be disseminated to counsel for all parties by the United States of America on or after 40 days after the filing date of the within order and opinion.[37]

---

37. In order to give plaintiffs and other parties the opportunity to appeal the within order before the memorandum is distributed to all parties, we are directing that the distribution by the United States of America to counsel for all parties not occur until at least 40 days after the date of filing of the within order and opinion. This will give all parties the opportunity to appeal this order within 30 days and to request a supersedeas before the document must be disseminated. We express no opinion on the merits of any potential request for supersedeas to stay dissemination of the memorandum until after any appeal is decided.

## ORDER

Now, November 13, 2002, upon consideration of the United States of America's motion for a protective order and for return of a privileged government attorney work-product document dated September 13, 1999, which motion was filed May 17, 2001; upon consideration of the United States of America's amended motion for a protective order and for return of a privileged government attorney work-product document dated September 13, 1999, which amended motion was filed August 30, 2001; upon consideration of defendants' brief in opposition to the motion for a protective order filed by the United States of America, a nonparty, filed on behalf of defendants Concept Sciences Inc., Irl E. Ward Ph.D., Dawn L. Ward and Brian Heath on June 5, 2001; upon consideration of defendants' response in opposition to the amended motion for a protective order filed by the United States of America, a nonparty, filed on behalf of defendants Concept Sciences Inc., Irl E. Ward, Dawn L. Ward and Brian Heath on September 5, 2001; upon consideration of the response of additional defendant Ashland Inc. to the United States of America's motion for a protective order and for return of a privileged work-product document dated September 13, 1999, which response was filed June 6, 2001; after hearing and closing arguments held April 30, 2002; and for the reasons expressed in the accompanying opinion,

It is ordered that the motion and amended motion of the United States of America are each denied.

It is further ordered that the September 13, 1999 memorandum prepared by Maureen A. Russo, Esquire, shall

be disseminated by the United States of America to counsel for the parties in all of the cases pending in the Court of Common Pleas of Lehigh County, Pennsylvania,[1] on or after 40 days after the filing date of the within order.

---

1. The following 12 actions are currently pending in the Court of Common Pleas of Lehigh County: *Adhesive Specialists Inc. v. Concept Sciences Inc.,* case no. 2000-C-183; *Trugreen Limited Partnership, d/b/a Trugreen-Chemlawn v. Concept Sciences Inc.,* case no. 2000-C-1791; *Bowers v. Alfa Laval Pumps Inc.,* case no. 2000-C-2280; *Adams v. Concept Sciences Inc.,* case no. 2000-C-3070; *Bowers v. Ashland Chemical Inc.,* case no. 2001-C-188; *Liberty Property Trust Inc. v. Concept Sciences Inc.,* case no. 2001-C-240; *County of Lehigh v. Concept Sciences Inc.,* case no. 2001-C-284; *Lehigh Realty Associates III v. Concept Sciences Inc.,* case no. 2001-C-295; *Adams v. Ward,* case no. 2001-C-470; *Lumbermans Mutual Casualty Company v. Concept Sciences Inc.,* case no. 2001-C-474; *Adhesive Specialists Inc. v. Ward,* case no. 2001-C-498; and *Team Imaging Inc. v. Concept Sciences Inc.,* case no. 2001-C-503.

All of these cases have been assigned to our colleague Honorable Lawrence J. Brenner for all purposes including trial. Moreover, all of these actions except *County of Lehigh v. Concept Sciences Inc.* have been consolidated for discovery purposes.